**Kevin O'NEAL, Petitioner**

v.

**Troy LEVI, et al., Respondents.**

**Civil Action No. 06–CV–5136.**

United States District Court,
E.D. Pennsylvania.

March 10, 2008.

Stuart Patchen, Defender Association of Philadelphia, Philadelphia, PA, for Petitioner.

James R. Pavlock, U.S. Attorney's Office, Philadelphia, PA, for Respondents.

## ORDER

THOMAS M. GOLDEN, District Judge.

■ AND NOW, this 6th day of March, 2008, upon careful and independent consideration of the petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241, and after review of the Report and Recommendation of United States Magistrate Judge L. Felipe Restrepo, and any objections filed thereto, it is hereby ORDERED that:

1.  The Report and Recommendation is APPROVED and ADOPTED;

2.  The petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 is DENIED as a second or successive petition [1];

1.  The Report and Recommendation (R & R) presents a thorough and detailed analysis of the issues presented in this case, and concludes petitioner's instant petition is a second or successive petition, and that no showing of "cause and prejudice" or a "miscarriage of justice" was made to allow additional review on the merits. The Court has determined the conclusions presented in the R & R provide ample justification to overrule petitioner's objections, and writes only to clarify and emphasize certain points discussed in the R & R and to briefly address petitioner's objections.

Although subsequent re-arrests for violations of petitioner's special parole occurred after the denial of his initial writ of habeas corpus filed in the Eastern District of North Carolina ("EDNC"), "a different factual basis or argument asserted to support the same legal theory advanced previously does not constitute a new ground for relief and is successive." Campbell v. Blodgett, 997 F.2d 512, 515 (9th Cir.1992) (citing Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963)). As noted in the R & R, both petitioner's prior and present habeas petition raise identical legal arguments challenging the Parole Commission's authority to return him to special parole after his original term of special parole was converted to regular parole. Accordingly, the legality of petitioner's detention has previously been determined by "a judge or court of the United States on a

3. There is no basis on which to issue a certificate of appealability.

IT IS FURTHER ORDERED that judgment is entered on behalf of respondents and against petitioner. The Clerk of Court shall close this matter for statistical purposes.

### REPORT AND RECOMMENDATION

L. FELIPE RESTREPO, United States Magistrate Judge.

Before the Court is a Petition for Writ of Habeas Corpus filed under 28 U.S.C. § 2241 by Kevin O'Neal. Petitioner is a federal prisoner currently serving a term of special parole. For the reasons which follow, the petition should be dismissed as a "second or successive" petition under the "abuse of the writ" doctrine.

### 1. PROCEDURAL HISTORY

By Order filed May 18, 2005 dismissing O'Neal's prior § 2241 petition, the Honorable Terrence W. Boyle, of the United States District Court for the Eastern District of North Carolina, set forth the pertinent procedural history of this case:

Kevin Carl O'Neal has a long and protracted criminal history. On or about March 25, 1986, [petitioner] was

prior application for a writ of habeas corpus," and the merits of the present petition should not be reviewed. 28 U.S.C. § 2244(a); *see also Hall v. Williamson*, No. 06–2456, 2007 WL 1455875, at *3 (M.D.Pa. May 11, 2007).

Further, petitioner has not made a showing of "cause and prejudice" by failing to present new facts to justify raising his claim a second time. First, he fails to point to an intervening change in the law between the filing of his prior and present petitions. While there is a split among the circuits as to whether the Parole Commission may return a parolee to special parole after a conversion to regular parole, the split is irrelevant since this Court, sitting in the Eastern District of Pennsylvania, cannot review the previous decision of the District Court in the EDNC. This split does not present an intervening change in the law. The only change in law to which petitioner can point is the law applied by the district judge in the EDNC and the governing law in the Third Circuit. Regardless of how petitioner came to reside in the Eastern District of Pennsylvania, he cannot end run the denial of a petition for writ of habeas corpus from a district judge in another jurisdiction by simply refiling the same petition in this district. The legal basis for his claim is identical to that raised in his petition in the EDNC, and his subsequent re-arrest in the Eastern District of Pennsylvania for violation of his special parole cannot be considered "new facts" requiring another adjudication on the merits. Therefore, he is unable to show "cause and prejudice" to allow a second review of the same claim.

Finally, failure to review petitioner's claims will not result in a miscarriage of justice, which generally applies only in extraordinary cases "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Werts v. Vaughn*, 228 F.3d 178, 193 (3d Cir.2000) (quoting *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). The fact that petitioner violated his special parole in a different judicial district than where his previous habeas petition was adjudicated does not present another opportunity to raise the identical legal arguments. Consequently, failure to address his arguments on the merits does not result in a miscarriage of justice. Doctrines of federal comity and judicial economy, in addition to 28 U.S.C. § 2244(a), caution against such duplicative proceedings. To do so would put this Court in the position of acting as appellate court of the District Court for the Eastern District of North Carolina. If petitioner did not believe his previous petition was adjudicated properly, the appropriate avenue of relief would have been to file a motion for reconsideration with the district court or an appeal to the Fourth Circuit Court of Appeals. This Court is not in a position to review the determination of our sister court.

Accordingly, petitioner presents a second or successive petition for habeas corpus and he fails to show "cause and prejudice" or a "miscarriage of justice" which would allow this Court to review the merits of his claim a second time.

convicted and sentenced in the United States District Court for the Eastern District of New York to a term of five years for distribution of heroin. Additionally, [he] was sentenced to a special parole term of ten years.

Petitioner was paroled on his regular term of imprisonment but was returned to custody as a parole violator. He was later released to the community and commenced his special parole term on December 10, 1990. Petitioner's probation officer reported to the Commission that [O'Neal] had violated the conditions of his special parole; and, on April 23, 1992, [the U.S. Parole Commission (alternatively 'Commission' or 'Parole Commission')] issued a violator warrant and on May 8, 1992, he was arrested. After the revocation hearing, the Commission revoked [his] parole, denied him credit for time spent on special parole, and gave him a new parole date of November 5 1993.

On November 5, 1993, [he] was reparoled, and he was to remain under parole supervision until May 4, 2002. Again, on November 16, 1994, a warrant was issued after the probation officer reported special parole violations. Petitioner was arrested on May 12, 1995[and] a parole revocation hearing was subsequently held. The Commission revoked [his] parole, denied him credit for time spent on special parole, and gave him a new parole date of March 10, 1996. At least three times after that his parole date was rescinded for disciplinary infractions which included assault and insolence towards a staff member. Petitioner was reparoled on

December 8, 1997, and was to remain on parole until November 7, 2003.

On December 27, 1999, the term of special parole was "converted" to regular parole by a Notice of Action from the Commission based on United States Court of Appeals recent decisions. Thereafter, another warrant was issued for testing positive for the use of. drugs and [he] was arrested on the warrant on January 3, 2000. On March 7, 2000, parole was revoked and he was credited with time spent on parole and continued to a parole date of January 3, 2001.

On January 3, 2001, he was paroled and to remain under supervision until November 7, 2003. Again, [he] tested positive for drugs, on August 6, 2002, a warrant was issued, and he was arrested on the warrant later that day. On September 30, 2002, the Commission revoked parole, denied him credit for time spent on parole and granted him a new release date on November 6, 2003. On the same date, the Commission also issued a notice vacating the previous Notice of December 27, 1999, converting special parole to regular parole, and vacating the March 7, 2000 decision granting credit to [him] for time spent on parole from December 8, 1997 to January 3, 2000, relying on *Johnson v. United States*, 529 U.S. 694, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000).

*See O'Neal v. U.S. Parole Comm'n*, No. 03–407, Order at 1–3 (E.D.N.C. filed May 18, 2005) (hereinafter cited as "E.D.N.C. Order filed 5/18/05") (Ex. 24 attached to Resp. to Hab. Pet.).[1]

---

1. The Court of Appeals in *Rich v. Maranville*, 369 F.3d 83 (2nd Cir.2004), *cert. denied*, 543 U.S. 913, 125 S.Ct. 233, 160 L.Ed.2d 193 (2004), addressed the impact of the Supreme Court's decision in *Johnson* on the Commission's authority to reimpose special parole

following revocation pursuant to 21 U.S.C. § 841(c). *Id.* at 85; *see also* E.D.N.C. Order filed 5/18/05, at 4. Consistent with the Parole Commission's actions and the District Court's decision on O'Neal's prior § 2241 petition, the Court of Appeals stated: "we now hold

On May 21, 2003, O'Neal filed in the Eastern District of North Carolina a federal habeas petition under 28 U.S.C. § 2241 contending "that the Commission's action of returning him to special parole following the revocation of his special parole was improper."[2] *Id.* at 3. Specifically, petitioner alleged that "the Parole Commission had no statutory authority under [21] U.S.C. § 841(c) to impose a second, third or fourth term of special parole after revoking the original term of special parole; nor did the Parole Commission have authority to forfeit street time credit ..." *See* Hab. Pet. Under 28 U.S.C. § 2241, at 2–3, *O'Neal v. U.S. Parole Comm'n*, No. 03–407 (E.D.N.C. May 18, 2005) (hereinafter "prior habeas petition") (Ex. 23 attached to Resp. to Hab. Pet.). On May 18, 2005, Judge Boyle dismissed that petition as without merit. *See* E.D. N.C. Order filed 5/18/05, at 4–5.

While that § 2241 petition was still pending, O'Neal was re-paroled on December 6, 2003, *see* Certificate of Parole dated 11/26/03 (Ex. 15 attached to Resp. to Hab. Pet.), but he was subsequently arrested on a parole violator's warrant, *see* E.D.N.C. Order filed 5/18/05, at 3. By Notice of Action dated March 10, 2004 (Ex. 16 attached to Resp. to Hab. Pet.), after O'Neal agreed to an expedited revocation proposal, the Commission again revoked his special parole, and ordered no credit for "street time" and re-parole after 15 months.

He was re-paroled June 15, 2005 to remain under parole supervision through August 14, 2007. *See* Certificate of Parole dated 6/15/05 (Ex. 17 attached to Resp. to Hab. Pet.). On July 19, 2006, the Commission issued yet another warrant charging him with violating the conditions of supervision by: using illegal drugs; committing the crimes of harassment and assault; committing criminal possession of a controlled substance, unlicensed operation of a motor vehicle, and failure to report arrest; and failing to report to his supervising officer as directed. *See* Warrant Application (indicating "Warrant Issued" July 19, 2006) (Ex. 18 attached to Resp. to Hab. Pet.). Following O'Neal's arrest and a preliminary interview, he consented to a proposed expedited revocation, and on October 25, 2006, the Commission ordered that his special parole be revoked, that he receive no credit for time spent on special parole, and that he serve a period of incarceration until the expiration of his sentence (approximately 17 months) with an "estimated release date of 1/04/2008." *See* Notice of Action dated 10/25/06 (Ex. 21 attached to Resp. to Hab. Pet.).

On November 14, 2006, O'Neal filed his § 2241 petition in this Court (Doc. No. 1), and on December 11, 2006, he filed an amended § 2241 petition (Doc. No. 2)

that *Strong* [*v. U.S. Parole Comm'n*, 141 F.3d 429 (2d Cir.1998), which held revoked special parole could not be reimposed,] was **abrogated** by *Johnson* and that the Commission may reimpose special parole following revocation and incarceration pursuant to [§ ] 841(c)." *See Rich*, 369 F.3d at 90 (emphasis added). Thus, the Court found that *Strong* did **not** "remain[ ] *valid* law after *Johnson*." *Id.* at 89 (emphasis added).

**2.** "[Special parole] differs from regular parole in three respects: 'first, special parole follows

the term of imprisonment, while regular parole entails release before the end of the term; second, special parole was imposed, and its length selected, by the district judge rather than by the Parole Commission;' third, if the conditions of special parole are violated, the parolee is returned to prison to serve the entire special parole term, and receives no credit for his time spent in non-custodial supervision, or 'street time.'" *Rich*, 369 F.3d at 85 (quoting *Strong*, 141 F.3d at 431).

(herein cited as "Am. Hab. Pet.").[3] In his habeas petition, O'Neal again argues that the Commission's action of returning him to special parole following the initial revocation of his special parole was improper.

In its Response, the government argues that the petition should be dismissed as "second or successive" under the "abuse of the writ" doctrine, *see* Resp. to Hab. Pet. at 6–7, and in any event that the petition is without merit, *id.* at 7–23. In support of its argument that the petition is an "abuse of the writ," the government points out that, "[d]issatisfied with the outcome in 2005 of his first Section 2241 petition filed in the [Eastern] District of North Carolina, [O'Neal] now turn[s] to another district court in another circuit to renew essentially the same arguments posed before in this first petition." *Id.* at 6.

## 2. DISCUSSION

■ "Section 2241 is the only statute that confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but **the execution**

of his sentence."  *See Coady v. Vaughn,* 251 F.3d 480, 485 (3d Cir.2001) (citing *United States v. Mares,* 868 F.2d 151, 151 (5th Cir.1989)) (emphasis added); *see Zayas v. INS,* 311 F.3d 247, 256 (3d Cir.2002) (identifying "applications challenging the manner in which a valid federal sentence is carried out" as an example of a "categor[y] of habeas petitions filed under § 2241") (citations omitted); *United States v. Reed,* 2006 WL 2349987, at n. 2 (E.D.Pa. Aug.11, 2006) (citing *Coady* ).  Therefore, this petition was properly brought under 28 U.S.C. § 2241.

In *Zayas v. INS,* the Court of Appeals for the Third Circuit "consider[ed] the applicability to petitions for habeas corpus filed pursuant to 28 U.S.C. § 2241 of both (1) the 'gatekeeping mechanism' by which 28 U.S.C. 2244(b) limits the filing of second or successive petitions for habeas corpus, and (2) the 'abuse of the writ' doctrine as expressed in the Supreme Court's decision in *McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991)."[4]  *See*

---

3. In his habeas petition filed on Nov. 14, 2006, O'Neal represented that at the time of the filing of his petition, he was "awaiting copies of all of the Notices of Action issued for him by the United States Parole Commission," and that "[u]pon receipt, additional and relevant procedural information will be forwarded to the court." *See* Hab. Pet. filed 11/14/06 (Doc. No. 1), at 4 n. 4. Therefore, upon subsequent receipt of copies of "previous Notices of Action," he submitted an amendment to his petition on Dec. 11, 2006 to "include the corrected dates obtained from these documents." *See* Am. Hab. Pet. ¶ 3. O'Neal's habeas petition and amendments thereto are collectively referred to herein as his "habeas petition" or "§ 2241 petition."

4. In *McCleskey,* the Supreme Court "addressed the problem of 'abuse of the writ' presented by sequential habeas filings." *Zayas,* 311 F.3d at 254. However, "concerned that successive habeas petitions filed in federal district courts still seemed to frustrate fi-

nality in the criminal process," five years after *McCleskey* was decided, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 24, 1996), which, among other things, "amended § 2244 so as to impose tighter constraints than *McCleskey*'s on habeas petitions invoking § 2254 to present collateral challenges to state criminal convictions." *Zayas,* 311 F.3d at 254; *see* 28 U.S.C. § 2244(b).  For example, under the AEDPA amendments, prior to filing a second or successive § 2254 petition, a petitioner must first move in the appropriate court of appeals for an order authorizing the district court to consider the application.  *See* 28 U.S.C. § 2244(b)(3)(a).  Furthermore, "[c]oncurrently with amending § 2244(b) to affect petitioners challenging state convictions, Congress, in AEDPA, amended § 2255 to impose substantially identical constraints on 'second or successive' habeas petitions challenging federal convictions." *Zayas,* 311 F.3d at 254; *see* 28 U.S.C. § 2255.

*Zayas,* 311 F.3d at 248. The Court of Appeals in *Zayas* concluded "that the District Court correctly ruled that [the] habeas petition was subject to dismissal for abuse of the writ." *Id.* at 258. The Court of Appeals held that although the § 2241 petition "was not subject to the gatekeeping regime of § 2244(b)," [5] *see id.* at 255, the habeas petition "should be considered in the context of *McCleskey,*" with "the caveat that application of *McCleskey* to [the] petition should be expected to yield a resolution in harmony with AEDPA." *Zayas,* 311 F.3d at 257.

■ Thus, "[t]he pre-[AEDPA] doctrines concerning abusive or successive petitions are applicable to petitions under 28 U.S.C. § 2241." *Louis–Martin v. Gonzales,* 2005 WL 3320840, at *1 (M.D.Pa. Dec.7, 2005) (citing *e.g., Rosales–Garcia v. Holland,* 322 F.3d 386, 398–99 (6th Cir. 2003); *Zayas,* 311 F.3d at 257); *see Esogbue v. Holmes,* 142 Fed.Appx. 98, 100 (3d Cir.2005) ("the pre-AEDPA doctrines concerning abusive or successive petitions still apply" to § 2241 petitions). Therefore, a "second or successive § 2241 habeas petition may ... be dismissed if its filing constitutes an abuse of [the] writ as defined in *McCleskey,* as long as such a resolution is 'in harmony' with AEDPA." *Abdel–Whab,* 2005 WL 551352, at *3 (citing *Zayas,* 311 F.3d at 257).

In addition, 28 U.S.C. § 2244(a) provides:

> No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that **the legality of such detention *has been determined* by a judge or court of the United States on a prior application for a writ of habeas corpus,** except as provided in section 2255.

28 U.S.C. § 2244(a) (emphasis added); *see Hall v. Williamson,* 2007 WL 1455875, at *3 (M.D.Pa. May 15, 2007) (quoting § 2244(a)), *aff'd,* 2007 WL 2900557 (3d Cir. 2007). Thus, § 2244(a) is "a finality provision which applies to any habeas application challenging 'the detention of a person pursuant to a judgment of a court of the United States,' and hence embraces, without limitation, habeas applications brought ... under § 2241." [6] *Zayas,* 311 F.3d at 255 n. 8; *Hall,* 2007 WL 2900557, at *4 (citing *Zayas* ); *see* 28 U.S.C. § 2244(a); *Esogbue,* 142 Fed.Appx. at 100 (citing *Zayas* ) (observing that § 2244(a) "applies by its terms only to an applicant who is in detention pursuant to a judgment of a court of the United States."). Consistent with the reasoning in *Zayas,* if a § 2241 petition is "second or successive" and its merits are unreviewable under pre-AED-

---

5. The Third Circuit indicated "that the stricter AEDPA gatekeeping mechanism set forth in 28 U.S.C. § 2244(b) applies **only** to habeas petitions filed pursuant to **§ 2254 and § 2255,** but **not those filed pursuant to 28 U.S.C. § 2241.**" *Abdel–Whab v. Ridge,* 2005 WL 551352, at *3 (E.D.Pa. Mar.3, 2005) (citing *Zayas,* 311 F.3d at 255) (emphasis added), *aff'd,* 132 Fed.Appx. 988 (3d Cir.2005).

6. Since the § 2241 petitioner in *Zayas* was a federal detainee "challenging [an] INS ruling[]," *see Zayas,* 311 F.3d at 256, and was not challenging detention "pursuant to a

judgment of a court of the United States," *see* 28 U.S.C. § 2244(a), § 2244(a) was not applicable in that case. However, the Court in *Zayas* indicated that its holding that the pre-AEDPA "abuse of the writ" doctrine is applicable to § 2241 petitions was consistent with cases that involved § 2244(a). *See Zayas,* 311 F.3d at 255 n. 8. Moreover, the Third Circuit in *Benchoff v. Colleran,* 404 F.3d 812 (3d Cir.2005), "conclud[ed] that the doctrine [of 'abuse of the writ'] retains vitality as a tool for interpreting the term 'second or successive' under § 2244." *Id.* at 813.

PA principles of the "abuse of the writ" doctrine, then such a petition is also unreviewable under § 2244(a), as long as such a resolution is "in harmony" with AEDPA.[7] *See Zayas,* 311 F.3d at 257.

■■ "Principles of federal comity and judicial economy permit a court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Abdel–Whab,* 2005 WL 551352, at *3. "In the context of petitions for habeas corpus, these concerns are reflected in the 'abuse of the writ' doctrine which prohibits petitioners from filing subsequent petitions for habeas corpus where an earlier petition has already been denied." *Abdel–Whab,* 2005 WL 551352, at *3; *see Christy v. Horn,* 115 F.3d 201, 208 (3d Cir.1997) (*McCleskey,* 499 U.S. at 491–92, 111 S.Ct. 1454).

■ "The abuse of the writ doctrine dictates that we should treat the term 'second and successive' as a term of art, which is not to be read literally." *Benchoff v. Colleran,* 404 F.3d 812, 817 (3d Cir.2005). The doctrine bars claims that could have been or were raised in an earlier habeas petition. *See id.; James v. Walsh,* 308 F.3d 162, 167 (2nd Cir.2002) (citing *McCleskey,* 499 U.S. at 493–95, 111 S.Ct. 1454) ("Under the abuse-of-the-writ doctrine, a subsequent petition is 'second or successive' when it raises a claim that was, or could have been, **raised in an earlier petition**.") (emphasis added); *Wise v. Fulcomer,* 958 F.2d 30, 33 (3d Cir.1992) (under the abuse of the writ doctrine a federal court need not entertain a subsequent habeas petition **unless** it alleges a claim *"not* adjudicated on the hearing of the earlier [habeas petition]" or "which could have been raised in an earlier habeas corpus petition") (emphasis added).

In *McCleskey,* the Supreme Court established that, where a petitioner has filed successive habeas petitions in more than one district court, the dismissal of the first habeas petition is of **"vital relevance"** to later court determinations of whether to consider similar petitions, and may be given **"controlling weight."** *McCleskey,* 499 U.S. at 482, 111 S.Ct. 1454 (emphasis added); *Abdel–Whab,* 2005 WL 551352, at *3 (citing *McCleskey* ) (emphasis added). The Supreme Court in *McCleskey* announced the following formulation of the "abuse of the writ" doctrine:

> When a prisoner files a second or subsequent application, the government bears the burden of pleading abuse of the writ. The government satisfies this burden if, with clarity and particularity, it notes petitioner's prior writ history, identifies the claims that appear for the first time, and alleges that petitioner has abused the writ. The burden to disprove abuse then becomes petitioner's. To excuse

---

**7.** Rule 9 of the Rules Governing § 2254 Cases provides: "Before presenting a **second or successive petition,** the petitioner **must** obtain an order from the appropriate court of appeals **authorizing** the district court to consider the petition **as required by 28 U.S.C. § 2244(b)(3) and (4)."** 28 U.S.C. foll. § 2254, Rule 9 (emphases added). "[H]abeas corpus petitions brought under § 2241 are subject to the Rules Governing § 2254 cases in the United States District Courts," pursuant to Rule 1(b) of the habeas rules, *see id.,* Rule 1(b); *Hudson v. Pugh,* 2005 WL 1155048, at *2 (M.D.Pa. May 10, 2005); *see*

*Gorko v. Holt,* 2005 WL 1138479, at *1 (M.D.Pa. May 13, 2005). However, in light of the Third Circuit's "determin[ation] that the gatekeeping regime of § 2244(b) is **inapplicable** to a 'second or successive' **§ 2241** habeas petition," *see Zayas,* 311 F.3d at 256 (emphases added), it appears that Rule 9 does not apply to § 2241 petitions. *See Abdel–Whab,* 2005 WL 551352, at *3 (citing *Zayas,* 311 F.3d at 255) (§ 2244(b) "applies only to habeas petitions filed pursuant to § 2254 and § 2255, but not those filed pursuant to 28 U.S.C. § 2241").

his failure to raise the claim earlier, he must show cause for failing to raise it and prejudice therefrom as those concepts have been defined in our procedural default decisions. The petitioner's opportunity to meet the burden of cause and prejudice will not include an evidentiary hearing if the district court determines as a matter of law that petitioner cannot satisfy the standard. If petitioner cannot show cause, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim.

*McCleskey,* 499 U.S. at 494–95, 111 S.Ct. 1454; *see Zayas,* 311 F.3d at 254 (quoting *McCleskey* ); *see also id.* at 252 (quoting *Macklin v. Singletary,* 24 F.3d 1307, 1312 (11th Cir.1994)) (*McCleskey* reformulated the doctrine of abuse of the writ, "replac[ing] the nebulous and discretionary 'ends of justice' standard with the more concretely defined cause and prejudice standard borrowed from procedural default law," a standard that "is an objective one which 'clarifies the imprecise contours' of the test that the district courts are to apply.' ").

█ Here, the government has satisfied its burden of pleading abuse of the writ. *See McCleskey,* 499 U.S. at 494–95, 111 S.Ct. 1454; *Zayas,* 311 F.3d at 254. Among other things, the government has provided evidence that O'Neal presented the grounds for relief included in his present § 2241 petition in his prior petition filed in the Eastern District of North Carolina, and that Court dismissed the habeas petition as without merit. *See* E.D.N.C. Order filed 5/18/05, at 3–5. O'Neal's prior petition contended "that the Commission's action of **returning him to special parole following the revocation of his special parole was improper.**" *See* E.D.N.C. Order filed 5/18/05, at 3 (emphasis added). That petition specifically alleged that "the Parole Commission had **no statutory authority under U.S.C. § 841(c) to impose a second, third or fourth term of special parole after revoking the original term of special parole; nor did the Parole Commission have authority to forfeit street time credit** ..." *See* E.D.N.C. Hab. Pet. at 2–3 (emphasis added). Thus, the claims presented in the prior petition challenged the Commission's authority to return O'Neal to special parole after revoking the original term of special parole.

O'Neal raises the same claims in the present petition. In this petition, he again challenges the Commission's authority to return him to special parole after revoking the original term of special parole. Again, he complains that due to his return to special parole since the revocation of the original term of special parole, he "has not received credit for any street time to which he is entitled since December 8, 1997." *See* Am Hab. Pet. at 6. However, these claims "ha[ve] already been adjudicated" by the Eastern District of North Carolina. *See, e.g., Razzoli v. FCI Allenwood,* 200 Fed.Appx. 166, 168 (3d Cir. 2006).

█ Since the government has satisfied its burden of pleading abuse of the writ, the burden to disprove abuse shifts to petitioner who must show "cause and prejudice," or a "miscarriage of justice." *See McCleskey,* 499 U.S. at 494–95, 111 S.Ct. 1454; *Zayas,* 311 F.3d at 254. In the context of successive habeas claims (as opposed to failure to raise the claims earlier), "cause" has been construed as meaning "cause for bringing a petition that fails to present a new ground for relief." *Campbell v. Blodgett,* 997 F.2d 512, 524 (9th Cir.1993), *cert. denied,* 510 U.S. 1215,

114 S.Ct. 1337, 127 L.Ed.2d 685 (1994);[8] *see Rosales–Garcia v. J.T. Holland,* 322 F.3d 386, 399 n. 15 (6th Cir.) (citing *Campbell* ), *cert. denied,* 539 U.S. 941, 123 S.Ct. 2607, 156 L.Ed.2d 627 (2003). "In other words, a petitioner must show cause for seeking review of the same claim twice— such as the discovery of new facts, or an intervening change in the law, that warrants reexamination of the same ground for relief raised in an earlier petition." *Campbell,* 997 F.2d at 524; *see Rosales– Garcia,* 322 F.3d at 399 n. 15 (citing *Campbell* ).

■ Acknowledging that **"the issue may be the same" in both of his petitions,** O'Neal argues that his present petition should not be considered an abuse of the writ since it was filed after he was again returned to "special parole following revocation on March 10, 2004 and October 25, 2006." *See* Petr.'s Reply at 4 (emphasis added). In other words, apparently conceding that his claims have been raised in a prior habeas petition and decided on the merits, petitioner argues that raising

the same claim should be excused since he was again returned to special parole.

The Third Circuit's holding in *Benchoff v. Colleran,* 404 F.3d 812 (3d Cir.2005), is instructive as to whether O'Neal's petition should be considered "second or successive." In *Benchoff,* the petitioner appealed from an Order of the District Court denying his habeas petition which claimed he was denied due process by the Pennsylvania Board of Probation and Parole (the "Parole Board") when it failed to give a meaningful statement of reasons for denial of his parole. *Id.* at 813. The claim challenged Pennsylvania's parole procedures following the denial of parole on three separate occasions. *Id.* at 814. "Each time, the notice of denial used the same 'fair administration of justice' language" challenged by petitioner in his habeas petition. *Id.* The issue on appeal was "whether a [habeas] petition challenging the administration of a petitioner's sentence, such as [the petitioner's] parole claim,[9] should be considered a 'second or successive' petition over which the District Court

---

**8.** In applying *McCleskey,* the Ninth Circuit observed that, in the context of applying the "abuse of the writ" doctrine, " 'cause' is generally meant to refer to … cause for failure to raise a claim in an earlier habeas petition." *See Campbell,* 997 F.2d at 524 n. 14 (citing *McCleskey* ). Therefore, "[i]n the context of a successive claim, an inquiry into cause and prejudice would appear to be unnecessary, because a successive claim by definition **has** been raised before." *Id.* at 524 (emphasis added). However, the Ninth Circuit pointed out that *Sawyer v. Whitley,* 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992), extended the "cause and prejudice" requirement to prisoners filing successive habeas petitions. *See Campbell,* 997 F.2d at 524 n. 14; *Rosales–Garcia,* 322 F.3d at 399 n. 15 (citing *Campbell* ); *see also Schlup v. Delo,* 513 U.S. 298, 318, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) ("[A] habeas court may not ordinarily reach the merits of successive claims … absent a showing a cause and prejudice.") (citation omitted).

**9.** Significantly, the Court in *Benchoff* consistently referred to the petitioner's challenge to three denials of parole as the petitioner's parole "claim" (as opposed to parole "claims"). In other words, despite the fact that the petitioner had been denied parole on **three** separate occasions prior to filing his petition, in that the petitioner was challenging the same parole procedure used in each of the denials, the Court construed the challenge to the three denials as one "claim" challenging Pennsylvania's parole procedure. *See, e.g., Benchoff,* 404 F.3d at 813, 815, 818, 819. The fact that there were multiple denials of parole did **not** mean that there were multiple or different claims being raised. Similarly, here, the fact that O'Neal was returned to special parole again after the filing of his prior petition which had already challenged the Commission's authority to return him to special parole on several occasions following the initial revocation of special parole does not mean that his claim is a new or different ground for relief.

lacked subject matter jurisdiction under 28 U.S.C. § 2244, if the petitioner had filed a prior petition that challenged the underlying conviction or sentence." [10] *Id.* at 813 (footnote added).

In determining whether the petition was "second or successive," the Third Circuit applied "the abuse of the writ jurisprudence, which predated the passage of § 2244, concluding that the doctrine retains vitality as a tool for interpreting the term 'second or successive' under § 2244." [11] *Id.* The Court noted that "[t]he primary question, . . . is whether [the petitioner] could have raised this challenge to Pennsylvania's parole procedures in his first habeas petition." *Id.* at 817. Although the petitioner's prior habeas petition did not challenge the Board's parole procedures, the Court observed that the petitioner had "received **two out of three** identically phrased denials of parole at the time he filed his first habeas petition." *Id.* at 818 (emphasis added). Thus, the third parole decision challenged by the subsequent habeas petition had not even been issued before the filing of the initial habeas petition. *See id.*

Nevertheless, in finding that the subsequent habeas petition was a "second or successive" petition pursuant to the abuse of the writ doctrine, the Court pointed out:

> The third parole decision, which initially offered the same "fair administration of justice" rationale, was therefore *not a necessary factual predicate* to [the petitioner's] due process claim. Indeed, *even one of the parole denials* would have been *sufficient* for [the petitioner] to formulate his complaint. As a result, we can fairly say that Benchoff "knew of all the facts necessary to raise his [parole] claim before he filed his initial federal petition."

*Id.* (emphases added); *see also Queen v. Fed. BOP,* 179 Fed.Appx. 838, 839 (3d Cir.2006).[12] In other words, despite the fact that the petitioner was claiming that three separate denials of parole (based on the same reasons) were improper and one of those denials occurred **after** he had filed his prior habeas petition, the Court found that the petitioner was challenging the denials based on the same ground for relief and that "parole claim" had arisen or could have been raised by the time he had filed his prior petition. *See id.*

10. "Examples of challenges to the administration of a sentence are those claims that raise issues relating to conditions of confinement, parole procedures or calculation of good-time credits." *Benchoff,* 404 F.3d at 813. As with the petition in *Benchoff,* O'Neal's petition challenges the administration of his sentence, rather than the underlying conviction or sentence.

11. Although *Benchoff* involved a § 2254 petition, the Court observed that "[s]ection 2244's strict procedural regime and substantive standards **only** apply if [the petitioner's] current petition **is** 'second or successive' within the meaning of the statute." *Benchoff,* 404 F.3d at 816 (emphases added). Finding that the habeas statute "does not define what constitutes a 'second or successive' petition," the Court "look[ed] to principles of the [pre-AEDPA] abuse of the writ doctrine in defin-

ing 'second and successive.' " *Id.* at 817 (emphasis added). Therefore, in that *Benchoff* applied pre-AEDPA principles, the reasoning in *Benchoff* is applicable to this case with regard to defining "second or successive" under principles of the pre-AEDPA abuse of the writ doctrine.

12. Affirming the dismissal of a § 2241 petition as "second or successive," the Court of Appeals in *Queen* stated: "We discern no difference between the claims raised in [the petitioner's] current § 2241 petition and those raised in prior habeas petitions. But even if the claims in [the petitioner's] § 2241 petition could be construed as 'new,' they are based on a factual predicate long known to [the petitioner] and thus they could have been raised in earlier habeas petitions." *Queen,* 179 Fed.Appx. at 839.

Similar to the reasoning in *Benchoff*, in this case the fact that after the filing of O'Neal's prior petition, the Parole Commission **again** returned O'Neal to special parole to complete his original sentence does not give rise to a new or different ground for relief.[13] Nor is that cause for seeking review of the same claim twice. As evidenced by O'Neal's prior petition, certainly he "was aware of the issue before he filed his first habeas petition," *see Zayas*, 311 F.3d at 258. Essentially, without distinguishing his returns to special parole **subsequent** to the filing of his prior petition as compared to his returns to special parole **before** he had filed his prior petition, O'Neal's present petition contends that this Court should hold differently than the Eastern District of North Carolina did on the issue of whether the Commission had authority to return him to special parole following the revocation of the original term of special parole. O'Neal neither points to the discovery of new facts which justify raising his claim again, nor does he point to an *intervening* **change in the law** between the time he filed his prior petition and the filing of his present petition. *See Campbell*, 997 F.2d at 524; *see Rosales–Garcia*, 322 F.3d at 399 n. 15 (citing *Campbell* ). Therefore, he is unable to show "cause and prejudice" for seeking review of the same claims twice.

Finally, in the alternative to showing cause and prejudice, a petitioner must show that failure to review the federal habeas claims will result in a "miscarriage of justice." *McCleskey*, 499 U.S. at 494–95, 111 S.Ct. 1454; *see Zayas*, 311 F.3d at 254 (quoting *McCleskey* ); *see also id.* at 252 (*McCleskey* reformulated the doctrine of abuse of the writ, "replac[ing] the nebulous and discretionary 'ends of justice' standard with the more concretely defined cause and prejudice standard borrowed from procedural default law"). "Generally, this exception will apply only in extraordinary cases, i.e., 'where a constitutional violation has probably resulted in the conviction of one who is *actually* **innocent.**' " *See Werts v. Vaughn*, 228 F.3d 178, 193 (3d Cir.2000) (quoting *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)) (emphasis added), *cert. denied*, 532 U.S. 980, 121 S.Ct. 1621, 149 L.Ed.2d 483 (2001). "To show a fundamental miscarriage of justice, a petitioner must demonstrate that he is actually innocent of the crime . . . by presenting **new evidence of innocence.**" *See Cristin v. Brennan*, 281 F.3d 404, 412 (3d Cir. 2002) (quoting *Keller v. Larkins*, 251 F.3d 408, 415–16 (3d Cir.2001) (citations omitted)) (emphasis added), *cert. denied*, 537 U.S. 897, 123 S.Ct. 195, 154 L.Ed.2d 166 (2002); *see Schlup*, 513 U.S. at 316, 115 S.Ct. 851. Here, petitioner fails to allege

---

**13.** The Supreme Court in *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), explained:

> By "ground," we mean simply a sufficient legal basis for granting the relief sought by the applicant. For example, the contention that an involuntary confession was admitted in evidence against him is a distinct ground for federal collateral relief. But a claim of involuntary confession predicated on alleged psychological coercion does not raise a different "ground" than does one predicated on alleged physical coercion. In other words, identical grounds may often be proved by different factual allegations. So also, identical grounds may often be supported by different legal arguments . . . or be couched in different language . . . or vary in immaterial respects.

*Id.* at 16, 83 S.Ct. 1068 (citations omitted); *see Campbell*, 997 F.2d at 515 (citing *Sanders* ) ("a different factual basis or argument asserted to support the same legal theory advanced previously does not constitute a new ground for relief and is successive"). Here, both O'Neal's prior and present habeas petition raise the same grounds, challenging the Commission's authority to return him to special parole after his original term of special parole had been revoked.

"new evidence of innocence" to satisfy the "miscarriage of justice" exception. *See Cristin*, 281 F.3d at 412 (quoting *Keller*, 251 F.3d at 415–16); *see Schlup*, 513 U.S. at 316, 115 S.Ct. 851. Since petitioner has failed to show "cause and prejudice" for seeking review of his claims twice or a "fundamental miscarriage of justice," this Court may not consider the merits of petitioner's claims. *See Zayas*, 311 F.3d at 254–58; *see also McCleskey*, 499 U.S. at 494–95, 111 S.Ct. 1454; *Cristin*, 281 F.3d at 409 n. 5 (citing *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)).

In that this petition "raises no new claims beyond those which have already been considered and dismissed" by the Eastern District of North Carolina, whether or not this Court would rule differently on O'Neal's claims than the District Court in North Carolina ruled is of no matter, and "controlling weight" should be given to the judgment of that Court.[14] *See, e.g., Abdel–Whab*, 2005 WL 551352, at *3; *see McCleskey*, 499 U.S. at 482, 111 S.Ct. 1454. Since "the legality of [O'Neal's] detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus," the merits of the present petition should not be reviewed. *See* 28 U.S.C. § 2244(a); *see also Hall*, 2007 WL 1455875, at *3. Accordingly, O'Neal's petition should be dismissed as a successive petition under the "abuse of the writ" doctrine. *See, e.g., Razzoli*, 200 Fed.

Appx. at 168 (citing *Zayas* ) ("this claim has already been adjudicated by the Eastern District of New York.... Thus, bringing the claim again at this time [in a § 2241 petition] is barred by the doctrine of abuse of the writ."); *Queen*, 179 Fed. Appx. at 839 (citing *Zayas* ) ("Because the successive [§ 2241] petition constitutes an abuse of the writ, ... the District Court correctly dismissed the habeas petition."); *Esogbue*, 142 Fed.Appx. at 100; *Abdel– Whab*, 2005 WL 551352, at *3, *4 ("This Court must dismiss **as an abuse of [the] writ** the § 2241 petition ... because **it raises no new claims** in support of Petitioner's request for release from detention.") (emphasis added), *aff'd*, 132 Fed. Appx. 988 (3d Cir.2005) ("We can find no fault with the abuse of the writ analysis conducted by the District Court.").

My Recommendation follows.[15]

## RECOMMENDATION

**AND NOW**, this 11th day of October, 2007, upon consideration of the Petition for Writ of habeas Corpus filed pursuant to 28 U.S.C. § 2241, and the government's Response thereto, **IT IS HEREBY RECOMMENDED** that the habeas petition be **DISMISSED** as "second or successive." October 11, 2007.

**14.** To the extent that O'Neal's present petition challenges the denial of his present claims by the District Court for the Eastern District of North Carolina, consistent with principles of the "abuse of the writ" doctrine and § 2244(a), "petitioner's proper avenue for relief would have been to file a motion for reconsideration with the district court or to appeal to the appropriate court of appeals and then the Supreme Court. Therefore, ... § 2244(a) [and the 'abuse of the writ' doctrine] bar[] this court from considering" his

claims. *See Hall*, 2007 WL 1455875, at *3. This Court is not an appellate court of the District Court for the Eastern District of North Carolina which denied petitioner's claims.

**15.** Petitioner is advised that he may file objections to this Report and Recommendation. *See* Local R. Civ. P. 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.