

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-21-2005

# Benchoff v. Colleran

Precedential or Non-Precedential: Precedential

Docket No. 03-3635

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Benchoff v. Colleran" (2005). *2005 Decisions.* Paper 1271.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1271

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 03-3635

———

ROBERT BENCHOFF,

*Appellant*

v.

RAYMOND COLLERAN

———

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 02-cv-01885)
District Judge: Honorable A. Richard Caputo

———

Argued February 8, 2005
Before: BARRY, FUENTES, and BECKER, *Circuit Judges.*

(Filed April 21, 2005)

GERALD J. PAPPERT
MICHAEL L. HARVEY(argued)
CALVIN R. KOONS
JOHN G. KNOOR, III
Office of the Attorney General, Litigation Section
15th Fl., Strawberry Square
Harrisburg, PA 17120
        *Attorneys for Appellee*

R. DAMIEN SCHORR (argued)
1015 Irwin Drive

Pittsburg, PA 15236
*Attorney for Appellant*

———

OPINION OF THE COURT

———

BECKER, *Circuit Judge*.

Robert Benchoff appeals from an order of the District Court denying his petition for a writ of habeas corpus claiming that he was denied due process by the Pennsylvania Board of Probation and Parole (the "Parole Board") when it failed to give a meaningful statement of reasons for denial of his parole. The determinative question on appeal, however, is whether a petition challenging the administration of a petitioner's sentence, such as Benchoff's parole claim, should be considered a "second or successive" petition over which the District Court lacked subject matter jurisdiction under 28 U.S.C. § 2244, if the petitioner had filed a prior petition that challenged the underlying conviction or sentence.

Examples of challenges to the administration of a sentence are those claims that raise issues relating to conditions of confinement, parole procedures, or calculation of good-time credits. In this case, Benchoff filed his first federal habeas corpus petition, which made claims related to the conduct of his trial and his conviction, only several months before filing the instant petition. We hold that because Benchoff's parole claim had ripened by that time, and he had no valid excuse for failing to raise the claim in his first petition, the District Court lacked subject matter jurisdiction and hence should have dismissed this petition as "second or successive" as required by § 2244. In making this determination, we will consult the abuse of the writ jurisprudence, which predated the passage of § 2244, concluding that the doctrine retains vitality as a tool for interpreting the term "second or successive" under § 2244.

We also reject Benchoff's claim that he was not required to raise his parole claim in his first habeas petition because he had not yet exhausted the claim in the Pennsylvania courts. We will

2

therefore dismiss the appeal and remand to the District Court with instructions to dismiss the petition.

## I. FACTS AND PROCEDURAL HISTORY

Benchoff was convicted of burglary, criminal trespass, simple assault, and two counts of interference with the custody of children in the Court of Common Pleas of Franklin County, Pennsylvania, on August 15, 1995. He first became eligible for parole from his sentence on December 16, 2000.

On June 27, 2002, Benchoff filed a federal habeas petition raising exhausted and unexhausted claims relating to the conduct of his criminal trial. The District Court denied the petition and no appeal was taken. Before any decision was rendered on his habeas petition, Benchoff filed the present federal habeas petition pursuant to 28 U.S.C. § 2254.[1] The gravamen of Benchoff's current petition is that the Parole Board violated his right to due process by failing to provide him with an adequate statement of reasons for denying him parole.

Benchoff was first reviewed for parole in 2000. The notice of denial of parole stated only that the Board "has determined that the fair administration of justice cannot be achieved through your release on parole." In 2001 and 2002, Benchoff was again

---

1 Prior to filing this habeas petition, Benchoff first sought relief from the Pennsylvania state courts. On April 1, 2002, he filed a petition for a writ of mandamus in the Commonwealth Court of Pennsylvania claiming that the Parole Board had denied him parole for unconstitutional reasons. The Commonwealth Court denied the writ three days later. Benchoff then filed a second mandamus petition in Commonwealth Court arguing that the Parole Board had not adequately revealed its rationale in denying parole. The Commonwealth Court denied the writ, and its decision was affirmed by the Pennsylvania Supreme Court on July 11, 2002. Benchoff then filed a petition for a writ of habeas corpus in the Pennsylvania Supreme Court on April 28, 2002, which was denied May 15, 2002. Finally, Benchoff filed yet another mandamus petition in the Commonwealth Court on May 28, 2002, which was denied December 3, 2002.

reviewed and again denied for parole. Each time, the notice of denial used the same "fair administration of justice" language. Benchoff then filed this federal habeas petition. Approximately two weeks after Benchoff filed this petition, the Parole Board modified its 2002 decision and provided Benchoff with additional information regarding the reasons for denial of parole.[2]

Since filing this petition, Benchoff has filed two more federal habeas petitions (on May 7, 2003 and July 25, 2003). Each of these petitions claims that it was a violation of the *ex post facto* clause of the United States Constitution for the Parole Board to use the 1996 amendment to Pennsylvania's parole procedures in making Benchoff's parole decision because the 1996 amendment was not in effect at the time of Benchoff's 1995 conviction.

The Magistrate Judge recommended that the present petition and the May 7, 2003 petition be granted and suggested that the Parole Board should be required to provide Benchoff with a statement of reasons for denial of parole. The District Court, however, declined to adopt the Magistrate Judge's recommendations, concluding that Benchoff did not have a due process right to a statement of reasons. The District Court held that

---

2 The revised 2002 notice of denial of parole stated:

Your best interests do not justify or require you being paroled/reparoled; and, the interests of the Commonwealth will be injured if you were paroled/reparoled. Therefore, you are refused parole/reparole at this time. The reasons for the Board's decision include the following:

> Your version of the nature and circumstances of the offense(s) committed.
>
> The notes of testimony of the sentencing hearing.
>
> Your interview with the hearing examiner and/or board member.

A-51.

4

a petitioner has no procedural right to a statement of reasons for denial of parole because neither federal nor Pennsylvania state law creates a substantive liberty interest in parole. The District Court did not address the May 7, 2003 petition's *ex post facto* claims. Benchoff has appealed the District Court's denial of his habeas petition only as to the due process parole claim.[3]

## II.  DISCUSSION

### A.

As noted above, notwithstanding the fact that Benchoff had already filed a prior petition for habeas corpus, the District Court decided this case on the merits without addressing the threshold question whether Benchoff's habeas petition should have been dismissed as a "second or successive" petition pursuant to 28 U.S.C. § 2244. Neither party has raised the successiveness issue in the District Court or on appeal.

Nevertheless, this Court must determine whether Benchoff's habeas petition was "second or successive" within the meaning of 28 U.S.C. § 2244(b), because § 2244 implicates both our appellate jurisdiction and the District Court's subject matter jurisdiction. *See Robinson v. Johnson*, 313 F.3d 128, 138 (3d Cir. 2002) ("Most courts that have considered the issue treat the successiveness issue as comparable to the defense that the court lacks jurisdiction of the subject matter."); *see also Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 95 (1998) ("[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a case under review, even though the parties are prepared to concede it.") (quoting *Mitchell v. Maurer,* 293 U.S. 237, 244 (1934) (internal quotation marks omitted)). Therefore, it is incumbent upon us to

---

3 We note that our decision today does not apply to Benchoff's *ex post facto* challenge to the Parole Board's October 2002 decision to deny him parole. The Parole Board's revised statement of reasons, issued in October 2002, was substantively different from the reasons it gave Benchoff on earlier occasions, and was issued after Benchoff had filed his first habeas petition.

address the successiveness issue *sua sponte* to ensure that we and the District Court have jurisdiction to hear the merits of Benchoff's petition.[4]

---

4We have some doubt that Benchoff's parole claim was properly filed as a habeas corpus petition pursuant to § 2254. Benchoff does not appear to be challenging the fact of confinement or to be seeking speedier release, but rather, to be challenging only the procedure used to communicate the Parole Board's decision denying him parole. In a very recent decision, the Supreme Court held that challenges to parole eligibility proceedings which seek new parole procedures but which would not necessarily result in speedier release do not "lie[] at the 'core of habeas corpus'" and instead are cognizable under 42 U.S.C. § 1983. *Wilkinson v. Dotson*, 125 S.Ct. 1242, 1248 (2005); *see also Georgevich v. Strauss*, 772 F.2d 1078, 1087 (3d Cir. 1985) (holding that petitioner's claim could be raised under § 1983 if the claim related only to the manner in which parole decisions were made and did not seek actual release on parole); *Carson v. Johnson*, 112 F.3d 818, 820-21 (5th Cir. 1997) ("If a favorable determination . . . would not automatically entitle [the prisoner] to accelerated release, the proper vehicle is a § 1983 suit.") (citations omitted); *Anyanwutaku v. Moore*, 151 F.3d 1053, 1055-56 (D.C. Cir. 1998) ("[C]hallenges to state parole procedures whose success would not necessarily result in immediate or speedier release need not be brought in habeas corpus . . . .").

Nevertheless, neither *Wilkinson* nor *Georgevich* held that § 1983 is the *exclusive* means for bringing such claims, although language in both opinions may suggest such a result. Our sister circuits have struggled with this question, and no uniform answer has emerged to the question of whether claims challenging only parole procedures may be brought in habeas petitions. *Compare Moran v. Sondalle*, 218 F.3d 647, 652 (7th Cir. 2000) (per curiam) ("[C]hallenges to procedures employed to consider applications for parole are civil actions under § 1983 and not collateral attacks under § 2241 and § 2254, unless the prisoner contends that application of his preferred procedures would have led to his immediate release."), *with Docken v. Chase*, 393 F.3d 1024, 1030 (9th Cir. 2004) (holding only that "§ 1983 was an *appropriate*

6

Section 2244, a provision of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), establishes the procedural and substantive requirements which govern "second or successive" habeas petitions. *See In re Minarik*, 166 F.3d 591, 599-600 (3d Cir. 1999). As a procedural matter, § 2244(b)(3)(A) establishes a "gatekeeping" mechanism that requires a prospective applicant to "file in the court of appeals a motion for leave to file a second or successive habeas application in the district court." *Felker v. Turpin*, 518 U.S. 651, 657 (1996). Once a petitioner moves for authorization to file a second or successive petition, a three-judge panel of the court of appeals must decide within thirty days whether there is a prima facie showing that the application satisfies § 2244's substantive requirements. 28 U.S.C. § 2244(b)(3)(D).

Section 2244(b)(2) provides the relevant substantive standard, which requires the dismissal of a "second or successive" habeas application unless:

(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Unless both the procedural and substantive requirements of § 2244 are met, the District Court lacks authority to consider the merits of

remedy" for challenging the timing of his parole eligibility determination "without reaching the issue of whether § 1983 was the exclusive remedy"). As we are able to dispose of this case on jurisdictional grounds, we will not reach this contentious question.

the petition.

B.

Section 2244's strict procedural regime and substantive standards only apply if Benchoff's current petition is "second or successive" within the meaning of the statute. Section 2244, however, does not define what constitutes a "second or successive" petition. Prior to the passage of AEDPA, we employed a collection of equitable principles known as the "abuse of the writ" doctrine to determine when a petition would be deemed abusive and thus barred from consideration on its merits. *United States v. Roberson*, 194 F.3d 408, 410 (3d Cir. 1999). Under this doctrine, a petition would be considered an abuse of the writ, *inter alia*, where the subsequent petition raised a habeas claim which could have been raised in an earlier petition and there was no legitimate excuse for failure to do so. *See McCleskey v. Zant*, 499 U.S. 467, 493-95 (1991).

The passage of AEDPA, however, has cast doubt on whether we should continue to employ "abuse of the writ" principles. In the wake of AEDPA, this Court has yet to decide the abuse of the writ doctrine's ongoing validity in this context. Indeed, in *United States v. Roberson*, we used language that suggests that AEDPA had completely superseded the abuse of the writ doctrine. 194 F.3d at 411 ("AEDPA . . . replaced the abuse-of-the-writ doctrine articulated in *McCleskey*."). In *Roberson*, the defendant did not submit his second habeas petition to us prior to filing his petition with the District Court, as required by § 2244(b)(3)(A). As a result, we affirmed the District Court's dismissal of Roberson's petition. While *Roberson* stated that § 2244 instituted new "gatekeeping" procedural provisions and made the substantive standard for successive petitions more stringent than under the abuse of the writ doctrine, it did not elaborate, and we do not believe that *Roberson* eviscerated the abuse of the writ doctrine to *interpret* AEDPA's terminology. Rather, we find that the abuse of the writ doctrine retains viability as a means of determining when a petition should be deemed "second or successive" under the statute.

We are supported in this view by the fact that, notwithstanding the AEDPA's passage, our sister circuits uniformly have continued to interpret "second or successive" with

8

reference to the pre-AEDPA "abuse of the writ" doctrine. *See Crouch v. Norris*, 251 F.3d 720, 723 (8th Cir. 2001) ("[I]t is generally acknowledged that the interpretation of 'second or successive' involves the application of pre-AEDPA abuse of the writ principles."); *Muniz v. United States*, 236 F.3d 122, 127 (2d Cir. 2001) (using the "equitable principles underlying the 'abuse of the writ' doctrine" to determine whether a petition is "second or successive"); *United States v. Barrett*, 178 F.3d 34, 44 (1st Cir. 1999) ("The core of AEDPA restrictions on second or successive § 2255 petitions is related to the longstanding judicial and statutory restrictions . . . known as the 'abuse of the writ' doctrine."); *see also In re Cain*, 137 F.3d 234, 235 (5th Cir. 1998) (per curiam); *Reeves v. Little*, 120 F.3d 1136, 1139 (10th Cir. 1997) (per curiam).

Moreover, the abuse of the writ doctrine's ongoing validity as a means of interpreting "second and successive" has been strongly suggested by the Supreme Court, which has implied that § 2244 is a statutory extension and codification of the equitable principles of the doctrine. *See Slack v. McDaniel*, 529 U.S. 473, 486 (2000) (suggesting that the definition of second or successive would be same under AEDPA as under pre-AEDPA law); *Felker*, 518 U.S. at 664 (finding that § 2244 codified and added restrictions that were "well within the compass of th[e] evolutionary process" of the abuse of the writ doctrine, which is a "complex and evolving body of equitable principles informed and controlled by historical usage, statutory developments, and judicial decisions") (quoting *McCleskey*, 499 U.S. at 489).

Informed by the teachings of the Supreme Court and our sister circuits, therefore, we will look to principles of the abuse of the writ doctrine in defining "second and successive."

C.

The abuse of the writ doctrine dictates that we should treat the term "second and successive" as a term of art, which is not to be read literally. Therefore, "a prisoner's application is not second or successive simply because it follows an earlier federal petition." *In re Cain*, 137 F.3d at 235. The doctrine does, however, bar claims that could have been raised in an earlier habeas corpus petition. *McCleskey*, 499 U.S. at 493-95; *Wise v. Fulcomer*, 958 F.2d 30, 34 (3d Cir. 1992). Thus, a subsequent petition that

challenges the administration of a sentence is clearly *not* a "second or successive" petition within the meaning of § 2244 if the claim had not arisen or could not have been raised at the time of the prior petition. *See Singleton v. Norris*, 319 F.3d 1018, 1023 (8th Cir. 2003); *Medberry v. Crosby*, 351 F.3d 1049, 1062 (11th Cir. 2003); *Hill v. Alaska*, 297 F.3d 895, 898 (9th Cir. 2002); *In re Cain*, 137 F.3d at 236.

The primary question, therefore, is whether Benchoff could have raised this challenge to Pennsylvania's parole procedures in his first habeas petition. Benchoff was first denied parole on September 12, 2000. He was again denied parole on September 14, 2001, and a third time on October 1, 2002. Each time Benchoff was denied parole, the Parole Board used the same "fair administration of justice" language without giving Benchoff the statement of reasons he currently seeks. Therefore, when Benchoff filed his original habeas petition on June 27, 2002, two of the three parole decisions that used the contested "fair administration of justice" language had already been issued.

When courts have permitted a petitioner to challenge the administration of his or her sentence in a subsequent habeas petition, the challenged conduct has occurred *after* the filing of the earlier petition. For example, in *Crouch*, the Eighth Circuit specified that the petitioner "could not have raised his parole-related claims in his first habeas petition" because "[h]is first parole denial was dated November 23, 1998, some ten months *after* he filed his § 2254 petition." 251 F.3d at 724 (emphasis added); s*ee also James v. Walsh*, 308 F.3d 162 (2d Cir. 2002) (claim challenging the incorrect application of petitioner's credit for time served had not arisen when petitioner filed his first habeas petition); *Hill*, 297 F.3d at 898 (finding the habeas petition was not successive because the district court had not previously addressed Hill's challenge to the calculation of his parole date on the merits *and* because those claims could not have been included in earlier petitions challenging his conviction and sentence); *Cain*, 137 F.3d at 236 (emphasizing that the petitioner could not have challenged the prison disciplinary board's decision to strip him of his good time credits in his earlier petitions).

In contrast, Benchoff had already received two out of three identically phrased denials of parole at the time he filed his first habeas petition. The third parole decision, which initially offered

10

the same "fair administration of justice" rationale, was therefore not a necessary factual predicate to Benchoff's due process claim. Indeed, even one of the parole denials would have been sufficient for Benchoff to formulate his complaint. As a result, we can fairly say that Benchoff "knew of all the facts necessary to raise his [parole] claim before he filed his initial federal petition." *Crone v. Cockrell*, 324 F.3d 833, 837 (5th Cir. 2003). The remaining question is whether Benchoff has a legitimate excuse for failing to raise the parole claim in his first petition.

As a preliminary matter, we do not gainsay that, intuitively, there appears to be a principled distinction between petitions that attack the underlying conviction and those that attack the administration of the sentence arising from that conviction. However, given the language and statutory purpose of § 2244, which codifies the longstanding policy against piecemeal litigation that was at the heart of the abuse of the writ doctrine, *see McCleskey,* 499 U.S. at 485, it is not surprising that there is no statutory or precedential authority for such a distinction. *See Reid v. Oklahoma*, 101 F.3d 628, 630 (10th Cir. 1996) (finding that distinctions between challenges to the execution of a sentence and challenges to the underlying conviction "are not made by . . . the relevant statutory provisions, 28 U.S.C. § 2244(b) & 2254"); *Cf. Coady v. Vaughn*, 251 F.3d 480, 485-86 (3d Cir. 2001) (determining that challenges to state parole board decisions must be brought pursuant to 28 U.S.C. § 2254 and therefore require a certificate of appealability even though the decision under attack is not the underlying conviction but the execution of the sentence).

Moreover, every Court of Appeals to have addressed the question has required a petitioner to raise claims relating to his or her underlying conviction in the same petition as available claims dealing with the administration of the sentence and has found a petitioner's failure to do so to be an abuse of the writ. *See Reid*, 101 F.3d at 630; *McGary v. Scott*, 27 F.3d 181, 183 (5th Cir. 1994); *Whittemore v. United States*, 986 F.2d 575, 579 (1st Cir. 1993); *Goode v. Wainwright*, 731 F.2d 1482, 1483-84 (11th Cir. 1984); *see also Fuller v. Baker*, No. 94-3989, 1995 WL 390298, at *1-*2 (6th Cir. June 30, 1995) (unpublished opinion). Therefore, Benchoff can not claim that he was somehow excused from raising the parole claim simply because his first petition challenged his trial and conviction rather than the administration of his sentence.

11

Alternatively, Benchoff attempts to justify his failure to include the parole claim in his first habeas petition because he had not yet exhausted the parole claim in the Pennsylvania state courts at the time he filed his first petition. Indeed, Benchoff had only begun the process of filing for a series of state court remedies on April 1, 2002.[5] We disagree that this can excuse his failure to raise the claim in his first petition.

First, the fact that Benchoff had already raised his parole claim in state court forecloses any argument that the factual predicate for the claim was not developed or that Benchoff was somehow unaware of the parole claim at the time he filed his first habeas petition. *See Olds v. Armontrout*, 919 F.2d 1331, 1332 (8th Cir. 1990) ("Having 'presented each of these [grounds] to the state courts before the first petition for habeas was filed . . . [petitioner] hardly can contend that these claims were unknown to him at [the time he filed his first habeas petition].'") (quoting *Antone v. Dugger*, 465 U.S. 200, 206 (1984) (per curiam)).

Moreover, failure to have exhausted the parole claim is not an excuse for Benchoff's failure to raise the claim in his first petition. In *Rose v. Lundy*, the Supreme Court held that

"[I]f a prisoner deliberately withholds one of two

---

5 We note, however, that Benchoff probably did not need to seek a writ of mandamus from the Pennsylvania state courts before filing for federal habeas relief. In *Defoy v. McCullough*, 393 F.3d 439, 445 (3d Cir. 2005), we held that "claims of constitutional violations in the denial of parole [except for *ex post facto* claims] in Pennsylvania need not be presented to the state courts via a petition for writ of mandamus in order to satisfy the requirement of exhaustion." In light of *Defoy*'s holding that Pennsylvania petitioners are not obligated to file either a writ of mandamus or a writ of habeas corpus before challenging their parole denial on non-*ex post facto* grounds, Benchoff likely did not need to seek further relief in Pennsylvania state courts before going directly to federal court. Nevertheless, as *Defoy* was decided well after Benchoff filed his habeas petitions, Benchoff could have reasonably believed he needed to seek a writ of mandamus prior to filing this claim in federal court.

12

grounds for federal collateral relief at the time of filing his first application, in the hope of being granted two hearings rather than one or for some other such reason, he may be deemed to have waived his right to a hearing on a second application presenting the withheld ground. . . . Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation, or to entertain collateral proceedings whose only purpose is to vex, harass, or delay". . . . [A] prisoner who decides to proceed only with his exhausted claims and deliberately sets aside his unexhausted claims risks dismissal of subsequent federal petitions.

455 U.S. 509, 521 (1982) (quoting *Sanders v. United States*, 373 U.S. 1, 18 (1963)).

Following this reasoning, the Fifth Circuit has held that "the sole fact that the new claims were unexhausted when the earlier federal writ was prosecuted will not excuse their omission." *Crone v. Cockrell*, 324 F.3d 833, 837 (5th Cir. 2003) (quoting *Jones v. Estelle*, 722 F.2d 159, 168 (5th Cir. 1983) (en banc)). *Crone* is closely analogous to Benchoff's case. In *Crone*, the petitioner challenged his sentence and alleged ineffective assistance of counsel in his first habeas petition, which was dismissed with prejudice. Several months later, Crone filed a second federal habeas petition claiming that he was improperly denied jail-time credits. The Fifth Circuit found that Crone should have brought his jail-time credit claim in his first petition even though this claim had not yet been exhausted in the state courts, because, at the time of his first petition, the factual predicate for the jail-time credit claim was completely established. Relying on *Rose v. Lundy*, the panel held that the failure to raise the jail-time claim in his first petition constituted an abuse of the writ, and the petition therefore was "successive" within the meaning of § 2244(b). *Id.*

We agree with the Fifth Circuit that *Rose v. Lundy* requires a petitioner to either fully exhaust all claims prior to filing a petition or to raise both exhausted and unexhausted claims in the first habeas petition. If Benchoff's parole claim was unexhausted, then *Rose v.*

13

*Lundy* would require the dismissal of the petition without prejudice.[6] Benchoff could then have properly re-filed the petition once all of his claims were exhausted. This re-filed petition would not constitute a second or successive petition. *See Slack v. McDaniel*, 529 U.S. 473, 488 (2000) (holding that a habeas petition filed after a previous petition was dismissed on exhaustion grounds is not a second or successive petition); *Christy v. Horn*, 115 F.3d 201, 208 (3d Cir. 1997). Rather than follow the procedure prescribed by *Rose v. Lundy* and its progeny, Benchoff chose instead to withhold his parole claim while he exhausted it in state court, rendering this petition "successive" under § 2244(b).

D.

Given that Benchoff's petition is successive, the District Court was required to have dismissed this petition because Benchoff did not satisfy § 2244's procedural and substantive requirements. Benchoff failed to seek authorization from this Court prior to filing his successive petition in the District Court as required under 28 U.S.C. § 2244(b)(3)(A). At all events, such authorization would not be justified, as § 2244(b)(2) requires the dismissal of "second or successive" petitions unless they fall into one of two exceptions, both of which are inapplicable to Benchoff's claim. Section 2244, therefore, deprived the District Court of subject matter jurisdiction to hear Benchoff's parole claim.

---

6We have endorsed the option of "[s]taying a habeas petition pending exhaustion of state remedies" as a "permissible and effective way to avoid barring from federal court a petitioner who timely files a mixed petition," rather than outright dismissal. *Crews v. Horn*, 360 F.3d 146, 151-52 (3d Cir. 2004); *see also Slutzker v. Johnson*, 393 F.3d 373, 383 (3d Cir. 2004) (discussing the evolution of our "stay-and-abey" procedure). The Supreme Court has recently approved, but limited, the availability of this procedure, finding "stay-and-abey" appropriate only "when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court" and holding that it should not be employed "when his unexhausted claims are plainly meritless." *Rhines v. Weber*, 125 S.Ct. 1528, — (2005).

14

For the foregoing reasons, we will vacate the judgment of the District Court and remand with directions to dismiss the petition for lack of subject matter jurisdiction.